Walworth, Chancellor.
This is an appeal by the defendant, Jackson, from a decree of the vice-chancellor of the first circuit. The bill is founded upon the same matters which were in litigation in this court in the case of Dunham v. Jackson, (6 Wend. 22,) in which case.Caroline Dunham, the now co-defendant of Jackson, was the complainant, and the present complainant, Griswold, was her agent and witness merely. The complainant in that case having neglected to redeem the stock within the time required by the decree, so that the equity of redemption had become barred, and the stock having become worthless, Jackson commenced a suit against Griswold to recover the amount for which the stock was pledged. Griswold thereupon filed his bill in this cause against Jackson, to restrain the proceedings in the suit at law, *524 and for further relief. The answer of the defendant on oath is waived, and the witness Tracy now proves slich a tender as Mr. Justice Marcy thought would have been sufficient, if he had testified to it in the former suit,
I think the vice-chancellor is right in supposing that the decree in the former suit is not a bar to the filing of this bill by Griswold, so far as it was necessary to protect bis rights, he not having been a party to the former suit. The complainant, if he succeeds at all, must succeed upon the case made by his bill, and not upon the supposed state of facts set up in the defendant’s answer and not proved. The bill, which is sworn to, states positively that the forty shares of stock last pledged was the stock of Caroline Dunham, the complainant’s sister, and that the complainant pledged it for her, as her agent, to secure the loan of $500, which was likewise made for her, The complainant therefore has ho claim against Jackson on account of a loss upon that stock ; and if the former had not made himself personally liable for the loan of $500, which he says he made as the agent for his sister, by signing the due-bills with his own name only, the bill, as to those forty shares of stock, would, of course, be dismissed. For, upon his own showing, he is in no .wmy responsible to his sister for the return of that stock, and has therefore no right to apply any claim against Jackson arising out of that transaction, as an equitable defence or off-set to Jackson’s other claims against him.
But so far as respects his personal liability to Jackson for the $500 loan, for which those forty shares of stock were pledged, if Jackson, by refusal to permit a redemption of that stock at the time of the tender, caused a loss upon the stock to more than the amount of the $500 loan and interest, he ought not, in equity, to be permitted to proceed against Griswold personally for any.part of the $500 loan, as to which, upon the case stated by the bill, Griswold was in the situation of a mere surety for his sister.
The other eleven shares of the stock were differently situated. Whether they actually belonged to Griswold, as the *525 answer supposes, or had only been lent to him. by his sister as stated in the bill, the loss upon those eleven shares of the stock fell upon him. For if it was her stock, and only lent to him, he was bound to return such stock to her or pay its value, although she has failed to recover it of Jackson ; and the decree in the former suit would afford Griswold no defence against her claim to compensation. Whatever was the actual value, therefore, of those eleven shares at the time of the tender and offer to redeem, is, under the circumstances, an equitable off-set against the debts which the defendant Jackson then held against Griswold beyond the $500 and interest borrowed by the complainant as the agent of Caroline Dunham. The amount of those other debts, as I understand the case, must have been considerably more than the market value of the eleven shares at the time, even if Jackson was not entitled to the $200, which was then a matter in dispute between the parties. The whole amount claimed, including the $500 borrowed for Caroline Dunham and the $200 in dispute, was $1300, which would leave a balance of about $600 of Gris-wold’s personal debts, excluding the amount in dispute, and $800 including that amount. The contract price of the stock at that time, as stated in the complainant’s bill, was eighty per cent, upon its par value, or $440 for the value of the eleven shares; and, according to the master’s report in the former case, it was about that time worth 76 per cent, or $418.
The vice-chancellor, therefore, has erred in supposing that the amount which this complainant was entitled to, on account of the loss upon the stock, as an equitable off-set against his own private debts, was more than the amount thereof. The decree is consequently erroneous in awarding a perpetual injunction against the defendant’s proceeding to collect any part of the demands for which the suit at law was brought. This is an error which he would not have fallen into if he had not, in such a complicated case, inadvertently supposed that the case made by the complainant’s bill would entitle him to the *526 amount of the loss on the forty shares of stock, not only as an equitable defence to the $500 borrowed for C. Dunham, for which he stands in the situation of a mere security, but also as an offset against his own personal debts. That, as 1 have-before shown, cannot be done, without virtually annulling the decree of this court, and the court for the correction of errors in the former case. For if he is allowed the excess of the value of that stock beyond the $500 borrowed for her by him as her agent, to be off-set against his own personal debt, she can recover it from him as money received to her use. The proper decree, therefore, if Jackson had not proceeded to judgment and execution in the suit at law, would have been for a perpetual injunction restraining him from collecting from Griswold any part of the $500 borrowed as the agent of Caroline Dunham; and that the value of the eleven shares of the stock at the time of the tendér should be applied in part payment of the other debts, and the balance only of those debts and interest be collected of Griswold; without prejudice to the right of Jackson to collect the $500 and interest from Caroline Dunham.
I am inclined to think the vice-chancellor was right in receiving the petition and making the decree to refund the' money collected pending the litigation, if any more was received than ought, in equity, to have been collected of Griswold; as that was a mere consequential direction founded on the decree upon the merits. But it was erroneous to include in the amount to be refunded, the costs of the suit against the bail who was not a party to this suit. And those costs were incurred by the neglect of the complainant to bring the fund into court. Those questions, however, become immaterial, from the conclusions at which I have arrived as to the claim of Griswold to the benefit of the excess of value of the forty shares of stock in which he had no interest farther than to extinguish his per? sonal liability for the $500 loan.
The decree appealed from must be reversed. And a decree prust be entered declaring that the decree in the former- *527 cause is no bar to the complainant’s right to show an equitable extinguishment of his liability for the $500, which, in his bill, is alleged to have been borrowed of the defendant Jackson for Caroline Dunham as her agent, upon the pledge, of the forty shares of stock in which the complainant had no interest either as borrower of the stock or otherwise ; and that, upon the facts appearing upon the pleadings and proofs in this case, the complainant has a good and valid defence to any personal claim against him for the recovery of the $500 so borrowed and the interest thereon. It must be further declared and decreed, that as to the eleven shares of stock borrowed from Caroline Dunham by the complainant as alleged in his bill, he was personally liable to her for the value thereof, and is therefore entitled to claim such value against the defendant Jackson, in the same manner as if it had been the complainant’s own stock, notwithstanding the decree in the former suit, to which he was not a party ; and that, upon the facts appearing upon the pleadings and proofs in this case, the value of the said eleven shares at the time of the tender, as testified to by Tracy, was an equitable satisfaction to that extent of the several debts or demands due and owing to the defendant Jackson from the complainant, at that time, other than the debt of $500 for moneys borrowed as the agent of Caroline Dunham. It must, therefore, be referred to a master in New-York, to ascertain the amount of those debts, and the value of the eleven shares of stock at that time, mid to state the balance due to the defendant Jackson, on account of such' debts, beyond the value of such stock. And the master must also ascertain and report what sum or sums have been collected of the complainant, or his bail, for the principal or interest of any such debts, or for the principal or interest of the loan of $500, made by Gris-wold as the agent of Caroline Dunham j and he must further ascertain the excess thus collected beyond what Jackson was entitled to receive for the balance so ascertained and the interest thereon, and to compute the interest on such excess from the time it was paid by the complainant or his bail. And that, *528 upon the coming in and confirmation of the master’s report, the defendant Jackson pay to the complainant, or his solicitor, for the use of the bail, if he has not already been indemnified by the complainant, the amount of such excess with interest thereon from the date of the master’s report.
E. Sandford, for the appellant, and
J. V. L. Pniyn, for the respondent.
Neither party is to have costs against the other xipon this appeal. But as the complainant has succeeded to nearly the whole extent of his claim, I shall give him his costs in the court below, except so much of his costs as have been produced by his neglect to make Caroline Dunham a party to the suit at the time of filing his bill. And neither party is to have costs as against the other upon the reference hereby directed.
A decree having been entered in conformity with the directions thus given, Jackson appealed to this court, where the case was argued by
Cowen, J.
The only question of fact in the case is whether a tender of the money due to Jackson was made in March, 1827, so that he was obliged to re-transfer the stock at that time. The oral evidence was clearly sufficient to make out the fact, if the main witness was to be credited. The court below thought he was; and there is nothing in the case updn Which we should be warranted in coming to a different cohcltision upon that evidence.
But the same question had been before examined and decided in chancery, on a bill filed by Caroline Dunhaiü against Jackson. (See 6 Wend. 22.) Her bill soxight an account for 40 of the shares only, which she alleged had been independently pledged to secure the $500 loan. She also claimed an accoxint for the value of the stock at the time of the tender. The defence interposed was, that the 51 shares were pledged to *529 secure both the $500 and the debt due from Griswold as principal. The proof failing to make out the alleged tender, the decree was, upon that point, against her. It merely allowed her the right to redeem, on paying the whole sum reported due both from her and Griswold, with costs. She omitting to make the payment, her bill was dismissed ; and the title to the whole stock thus became vested in Jackson. Griswold was the agent of Caroline Dunham in the prosecution of that suit, and a witness to prove the tender. He also held the relation of her surety for the payment of the $500, by having given his due bills for that sum. The decree in that cause is set up by Jackson’s answer as a bar to the present suit. It was disallowed by the chancellor; and whether rightly, presents, I think, the only question calling for much observation.
The question is simply, whether a decree or judgment in a suit between the creditor and the principal debtor shall bind the surety for the same debt; the surety being also agent for the principal in the commencement and conduct of the suit. This question, standing independently of the agency, has recently been examined in the supreme court, which held that a mere surety for the payment of a debt, without any agreement, express or implied, to be bound by a suit between the principal parties, is, at common law, no more affected by its event, if against him, than a mere stranger. (Douglass v. Howland, 24 Wend. 35, 52.) I had occasion there to consider the question on principle and authority, and to show the reason why the civil law holds a different rule. Under this law, the surety has a right of appeal. A decision against him, therefore,, would be 'prima facie evidence. No doubt, as the supreme court held at the last term, in a replevin case, a decision against the debt would discharge him. That, however, is not on the ground that he is a party, but because the judgment or decree extinguishes the debt; and the principal thing being thus destroyed, the incident—-the obligation of the surety—is destroyed with it. The effect is the same as a release by the creditor, or a payment by the debtor, who may do any act in *530 discharge of his surety, but nothing by which he shall be concluded beyond his original obligation. A test, somewhat resembling that of the civil law, is furnished by Doyly v. Smith, (2 Cas. Ch. 119.) It is there said, that the dismission of a former bill filed by a third person, though involving the same equity with the subsequent bill, is no bar, because the party filing the latter could not have had a bill of review in the first suit.
The only difference between the present case and those cited, lies in the fact, that here it appears the former suit was instituted and conducted throughout by the surety, as the agent for his principal. And he seems to have litigated with great severity $ for there was an appeal to the court of errors. (Dunham v. Jackson, 6 Wend. 22.) There are certainly many cases where a person, though not a nominal party to the suit, shall yet be concluded by it, because he has in fact taken the management of the cause; nay, where he has had notice of its pendency, and a chance to litigate, but neglected to do so. A familiar case is that of a party holding the mere equitable interest—an assignee or cestui que trust. So, where he is a guarantor or indemnitor of the party against the consequences of the suit. In the first case he has the right to a standing in court; and, in the latter case, the party to be indemnified is bound to allow him to come in and manage the litigation, or hazard, by a refusal, the right to recover over. In general, the failure to make a successful defence, on notice to the indemnitor, will be hoi den to conclude him, though this is not always so, nor does the rule, I apprehend, cover any case except that of a defence.. Even then, the question is not between the creditor and indemnitor, so much as between the latter and the nominal defendant. It is not a case of principal and surety. The indemnitor is quasi a party in interest, like an assignee; but I am \ aware of no case where mere surety is bound to defend, in Í order to save himself from injury by a judgment or decree | against his principal, even though he have notice both from the ) creditor and the principal. It is the business of the latter to *531 save his surety from all harm. The principal is the indemnitor ; and, without being personally sued, I do not see upon what ground the surety could claim to defend, as matter of right, for any purpose. The objection is f still stronger to his claiming that a suit should be brought in his principal’s name to annul or discharge the debt. The direct course is to file a bill, as the surety has here done, in his own name. It follows, that Griswold had no such interest in Caroline Dunham’s suit as gave him a right to control it. He was a mere naked agent, his power being liable to revocation at any time. She might have dismissed her bill, or declined to appeal, in despite of Griswold, without deducting from or adding to his right of defence; nor could he, in the language of Doyly v. Smith, have had a bill of review on the decree which passed. Had Griswold voluntarily come in and litigated as surety, with the consent of Jackson, in the name of Caroline Dunham, the case might have been a different one. So, if the creditor had served notice oni him, and his principal had interposed no obstruction. The su-« preme court thought, in Douglass v. Howland, that such a liti-‘ gation would affect the surety. The point, however, was not involved in that case, and the remark was thrown out on the strength of several authorities in neighbouring states which appeared to favor the distinction. (24 Wend. 56, 7.) Should the question arise, it may still be open to observation.
The case of Willey v. Paulk, (6 Conn. Rep. 74,) was not cited by counsel in Douglass v. Howland, and was overlooked by the court. The learned supreme court of Connecticut there cite the rule of the civil law with approbation, and declare it to be the ground of their decision. The action was against the surety in a probate bond, conditioned, among other things, that the executor should settle the estate according to law. The evidence offered was a judgment against the executor, an execution and demand of payment, which the executor refused to make, though he had assets. The judgment was held to. be conclusive. With deference, it seems to me that a *532 judgment against the executor and a refusal to pay, the estate having assets, were per se within the terms of the condition. The test of a failure to settle according to law was an unpaid judgment; and the case was, therefore, the same in effect as if the condition had said : “We will abide all judgments that shall be obtained against the executor.” Thus the rule of the civil law was brought conventionally into the particular case, as the supreme court admitted it might be in Douglass v. Howland. In the case of De Forest v. Strong, (8 Conn. Rep. 513,) the surety proved a judgment, execution, levy and set-off of land against the principal, insisting that the judgment was therefore paid. The plaintiff was allowed to prove a subsequent suit and recovery against the principal, on the original judgment, in order to repel the evidence of payment. "The court held that the latter judgment was pertinent to disprove the fact. It was not necessary in either of the Connecticut cases cited, to say, with the civil law, that the mere relation of principal and surety, in its own nature, subjects the latter, as a party or privy, to the binding effect of a judgment against the principal.
The point is by no means free from difficulty ; but, on the whole, I think the decree of the court of chancery was right, and should be affirmed.
All the members of the court who heard the argument, (except Senators Dixoñ and Root,) concurring in this result, the decree of the chancellor was affirmed.