McGehee and another *vs.* Jones.

No. 17.—ABNER McGEHEE and THOMAS R. LAMAR, executors of J. J. Lamar, deceased, plaintiffs in error, *vs.* WILEY E. JONES, defendant in error.

[1.] A complainant in Equity, who relies for relief upon a tender, must allege all the facts substantially, which are necessary in pleading a tender at Law.

[2.] A purchaser of land, who is in possession, cannot have relief in Equity against the payment of the purchase money, upon the mere ground of a defect of title, before eviction. If he is in possession under a deed, with covenants of warranty, he must resort to his covenants. If under a bond for titles, he must resort to his bond.

[3.] Upon demurrer, the Court will not inquire into the competency or regularity of an amendment to the bill, previously allowed by order of the Court.

[4.] If the obligor, in a bond for titles, is insolvent, or without the jurisdiction of the Courts, and there is no property within the jurisdiction, which would be liable to the satisfaction of his damages, and there is an outstanding title paramount to his, the purchaser will be entitled to relief against the payment of the purchase money, to the extent of his damage before eviction.

[5.] The insolvency or non-residence, must be distinctly alleged, and the defect of title, in what it consists, to what land it applies, and its value, with any other fact necessary to enable the Court to decree on the title and assess the damages, must be especially alleged.

In Equity, in Muscogee Superior Court. Decision on demurrer, by Judge Iverson, May Term, 1851.

Wiley E. Jones, in his bill filed against the executors of Jef. J. Lamar, alleged, that on 11th March, 1837, he purchased of Jef. J. Lamar, several lots and tracts of land in the County of Stewart, (describing them,) for the sum of $15,000, paid in three notes of equal amount, due January 1st, 1838, 1839, and 1840, and taking said Lamar's bond, "to make good and warrantee titles," when the purchase money was paid; that complainant had paid off and discharged two of the notes, and that Abner McGehee and Tho's R. Lamar, as executors of J. J. Lamar, had commenced suit and obtained judgment against complainant on the last note for $4,800 ; that complainant has paid "a large part of the amount of the said judgment, and on the 9th March, 1850, he tendered to the said Abner McGehee, one of the executors, the full amount of the balance due on said judgment, and demanded titles from him, &c." which McGehee neglected and refused to make; that he (complainant) is still ready and willing to pay the balance when the executors will make good and warrantee titles to him, and shall produce the grants and such a complete chain of title as the Court shall consider sufficient; that McGehee's attorneys had ordered the Sheriff to press the execution and collect one half the amount due thereon, which the Sheriff was about to do. The prayer of the bill was for an injunction, and for general relief."

On the coming in of the answer, a motion was made to dissolve the injunction, at which time leave was granted the com-

plainant to amend. By the amendment, complainant charged, " that Thomas Lamar, one of the executors, had taken no active part in the execution of the will of J. J. Lamar, deceased, nor had he in possession any of the assets of the estate, nor had he so co-operated with McGehee, as to make himself liable for any of his acts; that your orator has been informed, and believes, that the said McGehee, with his family, resides, or at least remains for the greater part of his time, out of the jurisdiction of the Courts of the State, viz: in Alabama, and that the great bulk of his property is there; and that he has not sufficient property within the jurisdiction aforesaid to respond to your orator in damages, for a breach of the condition of the bond aforesaid; nor has he in hand remaining, enough of the assets of the estate aforesaid, to make good such damages; most of the assets having been distributed or otherwise disposed of by him in the course of executing said will.

"And your orator further shows, that to the best of his information and belief, it is not in the power of the said defendants, or either of them, to comply with the condition of the bond, and make good titles, with warranty, to said lands; that, to the best of your orator's information and belief, the said defendants have not a complete chain of title from the State to themselves or their testator, to a single one of the lots of land; and that some part of the land sold, to the best of his knowledge and belief, has never been in the actual possession of any person or persons, for as much as seven years." The complainant could not specify what portions of the land were " in this predicament." The bill charged, that he was ignorant of these facts when suit was brought on this note, and he therefore did not offer them as a defence to the suit.

To this bill a demurrer was filed on three several grounds: 1st. That the original bill, before amended, did not make a case authorizing relief.

2d. That complainant had no right to amend, because there was no case made in the original bill to be amended, and the amendment made a different case from the original.

3d. That the bill, as amended, did not make a case authorizing the interposition of a Court of Equity.

The Court overruled the demurrer on all the grounds taken, and error has been assigned thereon.

In Equity, from Muscogee Superior Court.

G. E. THOMAS, one of the counsel for plaintiffs, insisted upon the following points and authorities:

1st. That the bill is void, for uncertainty in every important matter attempted to be set out, viz : As to the *nature and character of the defect* of the chain of title; as *to the particular lots of land sold, to which the defect in the chain of title applies; as to the place of residence of one of the defendants, Abner McGehee, or the amount of assets in his hands, within the jurisdiction of Georgia* 6 *Ga. Rep.* 589, the case of *Robson vs. Harwell and wife.*

2d. *That there being no ground of fraud alleged in the sale of the land,* set forth *in the bill, before any injunction can lie to stay the collection of the purchase money or any part thereof, due upon the sale thereof, where the party has been put into the possession of the lands sold, and has remained in the quiet and peaceable enjoyment thereof, for more than a dozen years, under bond for titles, there must be a previous eviction,* or at least a *paramount outstanding* title *put forth, and an eviction threatened under it, before the Court will interfere by granting an injunction to stay the collection of a part of the purchase money, upon the mere speculative ground, that there is a defect in the chain of title of the lands sold, in general terms only.* 1 *John. Ch. Rep. in the case of Bumper vs. Planter,* 213. 2 *John. Ch. Rep. the case of Abbott vs. Allen,* 519. 5 *Mass.* 493.

H. L. BENNING, for defendant in error.

1st. If there is a defect of title to part of a purchase of land, the purchaser may take possession and keep it; and, nevertheless, have a deduction from the price to the amount of

the value of the part to which the defect of title applies.    1 *Sug.*
*Ven.* 372.    1 *Ves. Jr.* 224, '5, '6.    See *Coffee vs. Newson,* 2
*Ga. Rep.* 442.

2. To prevent circuity of action, Equity will, in such a case,
interfere, and not leave the parties to their covenants at Law.

3. But in this case, unless Equity interposed, there would be
not only the circuity of action, as a consequence, but irrepara-
ble mischief to the complainant, Jones.    His judgment would
be worth nothing, by reason of McGehee's residence beyond the
jurisdiction, and having no assets within it—Lamar not having
so acted as to make him responsible.

4. We pray leave to amend, should the Court incline
against us.

*By the Court.*—NISBET, J. delivering the opinion.

Perhaps it would be justifiable to consider this demurrer
only in its application to the bill, *as amended.*    But I consider the
questions in the order in which they are made in the record, and
were presented in the argument.

[1.] The first point made is, that the bill, *before it was amend-
ed,* does not make a case authorizing relief.    The case is this:
The testator of the plaintiff in error, J. Lamar, sold to the de-
fendant in error, W. E. Jones, a number of lots of land.    Notes
were given for the purchase money, amounting to some $15,000,
payable by instalments, and a bond for titles, conditioned to
make good and warrantee titles when the purchase money was
paid, was executed by Lamar to Jones.    Jones paid the two first
instalments.    Suit was brought, by Lamar's executors, on the
note for the last instalment, and they obtained judgment for
$6,800, a large part of which Jones avers that he has paid.    He
alleges that, " on the 9th March, 1850, he tendered to Abner
McGehee, one of the executors of Lamar, the full amount of
the balance of the judgment, and demanded titles from him,
which he neglected and refused to make; that he (Jones) is still
ready and willing to pay the balance, when the executors will
make good and warrantee titles to him, and shall produce the

grants and such a complete chain of titles as the Court shall consider sufficient;" that McGehee's attorneys have ordered the Sheriff to press the execution for the balance of the judgment, and collect the one half due thereon, which the Sheriff is about to do. These are the facts alleged in the bill; and upon this case the complainant prays an injunction against the judgment, and for general relief. If there was equity in this bill in other respects, it could not stand against the demurrer, because of the want of certainty in the averments relative to the tender. They are too vague. The general statement, that a tender was made, is not enough. It is as defective, as a general averment of fraud. That a tender was made, is a conclusion of the pleader, simply. He must state the facts which constitute a legal tender. The same precision, I know, is not required in Equity pleadings that is exacted at Law; yet, in the language of *Lord Thurlow,* there must be something *substantial.* The facts must be so stated as to be issuable. Defendant must be notified of the facts out of which the plaintiff's equity springs, and which he is to controvert. The rule at Law is, that a defendant, pleading a tender, must show an actual production of the money, and offer to pay it, or that the production of it was dispensed with by his adversary. 10 *East,* 101. 4 *Esp. N. P. C.* 68. 1 *Bingham's N. C.* 253. 6 *Wend.* 22. 3 *Stark. Ev.* 1559. 2. *Wils.* 74. *Wheat. Selw.* 153. Substantially, a party in Equity, claiming relief on the ground of a tender, must so plead. It is not enough at Law, to plead that the party is still ready and willing to pay; he must state that he was always ready to pay, in addition to that. And if the declaration and plea show that the defendant was not always ready and willing to pay, the plea will be bad. 1 *Saund.* 33, *n.* 2. 8 *East,* 168, '9. 10 *East,* 168. The averments are fatally defective in this, that they state a *conditional* tender. The offer to pay must be unconditional. 8 *Greenl.* 107. *Ib.* 119.

This bill shows that the complainant's offer to pay, was coupled with a demand for titles; he does not even aver that the defendants below refused to accept. *Non constat,* but that they were eager to accept the money offered. The averment is, that they refused and neglected *to make titles.* Complainant proceeds

to say, that he is still willing and ready to pay, *when the executors shall make good and warrantee titles*, &c. &c. So the allegations show a conditional tender, which, in fact, affirmatively exhibit a case without equity.

[2.] If, however, these allegations were sufficient, the bill would not then make a case for Equity jurisdiction. The defendant in error, relying on his original bill, must be turned over to his action at Law on the bond.

The bill does not show that Jones went into possession of these lands; but that fact is inferable from his complying, to so large an extent, with the contract, in paying the greater part of the purchase money. Not much reliance, however, is placed upon this inference. To place himself out of the operation of the rule which I am about to state, I conclude that the complainant in Equity must show, by his bill, that he is out of possession. Coming into Equity for relief, the complainant must make a case within the rule of Law, which authorizes the relief. If out of possession, I may concede, for the sake of the argument, that he is entitled to relief, but not otherwise. Not averring that fact, the conclusion of Law is, that he is in possession, under the contract of purchase set forth. The rule, then, is this, to-wit: *a purchaser of land, who is in possession, cannot have relief in Equity, against his contract to pay, on the mere ground of a defect of title, without a previous eviction.* When he goes in under a deed, with covenants of warranty, and apprehends a failure of title, and wishes relief before eviction, he must resort to his covenants; and if under a bond for titles, he must resort to his bond. A Court of Equity is not the appropriate tribunal to try titles to land. It may, perhaps, try title to land when it comes up incidentally; but not when the case depends upon a simple legal title, and is brought up directly. The power is to be exercised only in difficult and complicated cases, affording peculiar grounds for equitable interference. 1 *Mad. Ch.* 135. 6 *Brown P. C.* 575. 2 *Johns. Ch. R.* 524.

This bill does not even charge, that there are outstanding titles to the land, much less does it set them forth. The wide inference is, because the plaintiff in error has neglected and re-

fused to make good and warrantee titles; *therefore,* there is a ti-
tle outstanding, which must needs defeat the complainant's ti-
tle.   If, in any case before eviction, Equity could interfere, it cer-
tainly could not upon so meagre a case as this bill makes.   But
it will not, in any such case.   " It would lead (says *Ch. Kent*) to
the greatest inconvenience, and perhaps abuse, if a purchaser
in the actual enjoyment of land, and when no third person as-
serts, or takes any measures to assert a hostile claim, can be
permitted, on suggestion of defect or failure of title, and on the
principle of *quia timet,* to stop the payment of the purchase
money, and of all proceedings at law to recover it."   The learn-
ed Chancellor suggests, that an outstanding incumbrance, ad-
mitted by the party, or shown by the record, might, *perhaps,* form
an exception in case of covenants against incumbrances.   But
he does not decide that it would be an exception.   If such a
case be an exception, this is not the case, and cannot fall within
it.   Here the party does not admit, and the record does not show,
an outstanding incumbrance ; nor is there any covenants against
incumbrances.   If fraud were charged in the sale, that would
be an exception.   Here fraud is not charged.   There are cases
where Equity will relieve, upon other grounds, to which I will ad-
vert when I come to consider the demurrer to the amended bill.
On this bill, the plaintiff below was not entitled to relief, espe-
cially to the relief asked, to-wit: an injunction.   *Abbott vs. Al-
len,* 2 *Johns. Ch. R.* 521.   *Bumpus vs. Platner,* 1 *Johns. Ch. R.*
213, 218.   13 *Ves.* 114.

The second ground of demurrer is, " that complainant had
no right to amend, because there was no case made in the orig-
inal bill to be amended, and the amendment made a different case
from the original."   The record discloses simply, that when the
answer came in, a motion being made to dissolve the injunction,
by leave of the Court first had, the complainant amended his
bill.   Several objections were made to the regularity of this
amendment, on the argument, as that it was not sworn to, and
that the defendant had no notice of it; besides, that of there
being no case made in the original bill, upon which an amend-
ment could be engrafted.   A demurrer cannot allege any matter

foreign to the bill.   It lies only for objections apparent upon the face of the bill itself, either for matter inserted or omitted therein, or for defects in the frame or form thereof.   It takes the bill as presented, and from what is apparent, it derives its functions. *Story's Eq. Pl.* §§446, '7, '8.   *Mitf. Eq. Pl. by Jeremy*, 107.   1 *Sim. R.* 5.   4 *Paige*, 374.   2 *Ves.* 245.   2 *Ves. Jr.* 83.   Now, we have never known a demurrer admitted to go behind the bill to which it is a defence, and inquire into the regularity of amendments allowed, or into any other interlocutory judgment. It is not competent by demurrer to bring into review a judgment or order allowing an amendment.   It may be true, that the bill was not amendable or that the amendment was irregularly granted.   The defendant below ought to have contested it at the time, and if then unsuccessful, he might have brought a writ of error to this Court.   And if he had no notice—if he had not his day in Court—he is not without means of redress ; but not by demurrer.

[3.]  The last assignment is, " that the bill, as amended, does not make a case authorizing the interposition of a Court of Equity."   We have seen what the original bill is, and for the reasons given, we hold that it makes no case for the interposition of a Court of Equity.   Is the case helped by the amendment? The grounds taken in the amendment, if properly charged, do make a case for equitable interference.   We have stated, that to the general rule, that a purchaser of lands in possession before eviction, is not entitled to relief in Equity against the payment of the purchase money.   There is an exception in the case of fraud.   The case attempted to be made in this amended bill, we think, is also an exception.   The important facts attempted to be therein set up, are, that the lands, or a part of them, are encumbered with a title paramount to the vendor's ; that one of the executors, Dr. T. Lamar, never had any active participation in the administration of the estate ; that the acting executor, Mr. McGehee, does not reside within the jurisdiction of the State, and that there is not, within the jurisdiction, property belonging to him, sufficient to respond to the damage of the complainant ; and that he has not in hand sufficient of the property of the es-

tate remaining, to make good the damages; having distributed or disposed of *most* of the assets of the estate, in executing the will.

[4.] Now, we hold, that if there is an outstanding title to the lands, or a part of them, better than the vendor's, and the executor is either insolvent or without the jurisdiction, and there is not within the jurisdiction property enough belonging to the estate to respond to the complainant's damage, by reason of the failure of the title, Equity will enjoin the judgment for the purchase money, until an accounting is had between the parties, and decree a credit in favor of the purchaser, equivalent to the damage sustained. By all the analogies of the law, this would be proper. The insolvency of the executor, and the removal of the property of the estate out of the jurisdiction, would, I have no doubt, entitle the creditor to relief. A creditor, if the executor is insolvent, can go upon the debtor of an estate, and get satisfaction for his claim. The purchaser, standing in character of a creditor, holding funds in his hands belonging to the estate, Equity, in case of insolvency, would decree (his claim to damages being established) that the funds in his hands be applied to that claim. So, also, if the executor is out of the jurisdiction, and there is no property within the jurisdiction liable to the satisfaction of his damages. *Clarke et al. vs. Cleghorn,* (6 *Ga. R.* 220.) In such a case, the purchaser could not move at Law; he could not make a case at Law, with neither a person to sue nor property to attach; and if he could get a judgment, he could not enforce satisfaction. If, in such a case, Equity could not stay the collection of the purchase money, irreparable injury would result to him.

[5.] The question now is, are the averments in the bill sufficient to make the case contemplated? We hold that they are not. They are exceedingly loose and uncertain. Scarcely a single one of the material facts is so stated as to enable the defendant to take issue upon it. Every material fact to which the plaintiff intends to offer evidence, must be *distinctly* stated in the bill; and if not, he cannot prove it, and the Court can make no decree. This question is made on demurrer, which admits the

McGehee and another *vs.* Jones.

facts stated in the bill. Let all the charges be true, as they stand, and the complainant has no equity. He does not bring himself within the rules of law, applicable to the case, which entitle him to relief. One indispensable fact is, the non-residence of the executor. Is that distinctly stated? Is it *positively* averred? I think not. Let us see. The allegation is this: "Your orator has been informed, and believes, that the said McGehee, with his family, resides, or at least remains, for the greater part of the time, out of the jurisdiction of the Courts of this State, viz: in Alabama." The charge ought to be certain, that he resides without the jurisdiction. It is not certain. It is alternative. He resides out of the jurisdiction, *or* he remains for the greater part of his time without the jurisdiction. The latter clause neutralizes the former, and both amount to nothing. No practical issue could be formed on it. He does not aver that the executor has no assets to pay the damages: he says he has not in hand sufficient for that purpose, and adds, that *most* of the assets have been paid out or distributed. There is no certainty in this averment. So, also, the charge as to the title, is wholly insufficient. He charges, that it is not in the power of the executors to make good warranty titles to the lands; that, to the best of his *information* and *belief,* they have not a complete chain of title from the State to themselves or their testator, to a single one of the lots of land, and that some parts of the land have never been in possession of any person for as much as seven years. Merely denying the ability of the executors to make titles, and that they have a complete title to a single lot of the land, and that a title has been perfected by the statutory term of possession, falls immeasurably below the requirements of the complainant's case. It is indispensable that he set forth the defect of title—show in what it consists—to what portion or lots of land it applies, and its value—with such particularity, that the Court may consider of, and decree upon the title, and assess the damages. The Court would not decree, as a matter of course, (the complainant having made out his case,) that this judgment be perpetually enjoined, but would bring the parties to

an accounting, and decree an injunction of so much of the judgment as would be equivalent to the plaintiff's damage, or a credit on the judgment for that amount.    Hence the requirement, that every thing should be charged specially, which is necessary to the ascertainment of the damages.    See *Robinson vs. Harwell and wife, and authorities there cited*, (6 *Ga. R.* 598.)    Upon these grounds, let the judgment below be reversed.