No. 23.—GREEN, TRACY & Co. plaintiffs in error, *vs.* BRYAN INGRAM *et al.*, defendants.

[1.] The allegations of a bill, which state that a firm, " or *some* of the members composing said firm," had obtained control of certain *fi. fas.* and done certain acts complained of, are too loose and uncertain. So is the alternative allegation, that "*some* of the firm had obtained control of said *fi. fas.* by purchase *or otherwise.*" So, too, the averment, that said firm bought " the same, *either for R, or after his death.*" For a similar reason, the statement is inaccurate, that " to *some* of these *fi. fas.* and judgments, the defendants have not procured formal assignments." In like manner, the allegation, that "*most* of the *fi. fas.* and judgments, so bought and controlled, are against said R, jointly with others," &c. is very loose, as not admitting of a practical issue.

[2.] Where G T & Co. made a *bona fide* purchase of property, against which there are judgment liens, and before or afterwards, purchased or got, con-

Green, Tracy & Co. *vs.* Ingram *et al.*

trol of those judgments, and subsequently caused them to be levied on other property of the defendant in *fi. fa.* and the same was sold and brought into Court by the Sheriff, and claimed by younger judgment creditors: *Held*, that at the instance of these younger judgment creditors, a Court of Equity cannot properly compel G T & Co. to satisfy their older *fi. fas.* out of the said property, purchased by them.

[3.] Where property, subject to such older judgments, belonged to a firm of which the defendant in *fi. fa.* was a member, was liable to pay the debts of said firm, and was also claimed as the private property of the survivor of said firm : *Held*, that the survivor is in the position of one who has a fund in his hands, on which there are two liens or claims, and that in Equity, he would have the right to insist, that these older *fi. fas.* should be turned upon a fund in Court, the individual property of the defendant in *fi. fa.* : *Held*, also, that if on such fund there was the lien of younger judgment creditors, then, inasmuch as both the surviving partner and these younger judgment creditors, sustained to it the relation of innocent claimants, with equal equities, a Court of Chancery could not properly interfere between them.

[4.] An allegation, that such older judgment creditors have not only laid by and neglected to enforce their rights, but have allowed money, to a large extent, to be raised from the defendant in *fi. fa.* by younger judgment creditors, where there is no charge of fraud or collusion, or advantage gained by the older plaintiffs in *fi. fa.* amounts to a charge of simple negligence, and a Court of Chancery cannot treat such negligence as a satisfaction of the debt.

In Equity, in Bibb Superior Court. Decided by Judge POWERS, January Term, 1854.

This was a bill filed by Brown and Dimick, merchants in N. York, against Green, Tracy & Co. of Macon, setting forth, in substance, the following facts, viz : that at November Term, 1852, complainants obtained judgment against Samuel J. Ray, for $3078 86, with $661 62 interest, up to the 14th November, 1852, upon which execution issued.

That the said Ray died on the 11th January, 1853, and that soon thereafter, Counsel of complainants delivered said *fi. fa.* to the Sheriff of Bibb County, with instructions to levy the same on all Ray's property—his negroes, and one half interest in the Georgia Telegraph, including types, &c. &c. But that said levy was not made until 28th March, 1853, when the said half interest was claimed by said defendants, who bought said

half interest (*if at all*) after the death of said Ray, from his former partner in the printing business, Thomas L. Ross, and after said notice to levy on the same, and with knowledge of said instructions. That said claim is still pending and undisposed of in said Court.

That said firm of Green, Tracy & Co. or some of the members composing said firm, having obtained control, by purchase or otherwise, of a number of the oldest *fi. fas.* against said Ray, (naming them) caused the same to be levied on the said negroes of said Ray, which had been pointed out as aforesaid, by the Counsel of your orators, and which negroes were on the —— day of —— 1853, sold by the Sheriff, under the levies so made of the *fi. fas.* controlled by Green, Tracy & Co. the proceeds of which sale, viz : $1808 90 is now impounded by order of Court, for distribution. That at May Term, 1853, of said Court, Counsel for complainants moved said Court to order said fund to be paid to complainants' *fi. fa.* which was opposed by Green, Tracy & Co., thus claiming the same on their older *fi. fas.* as they had a superior lien. Complainants charge that this would be unjust, for the following reasons :

1. Because the said oldest *fi. fas.* are of dates prior to the partnership of said Ray and Ross—prior to which partnership the said Georgia Telegraph was the sole property of said Ray, and as such, subject to the lien of the *fi. fas.* so controlled by Green, Tracy & Co. ; and of sufficient value to pay off said *fi. fas.* —whereas the *fi. fa.* of complainant has been obtained since said partnership and the said Georgia Telegraph was the joint property of Ray & Ross—and said firm is much indebted— and that said partnership property is not liable to be sold for the individual debts of said Ray, until the debts of Ray & Ross are paid.

2. That Green, Tracy & Co. not only have a lien on two funds, and complainants only on one (to wit: the fund in Court) and not on the Georgia Telegraph: but that Green, Tracy & Co. have received and are now in possession of said Georgia Telegraph, which is sufficient to satisfy their claims—that this is,

Green, Tracy & Co. *vs.* Ingram *et al.*

in Equity and Law, a satisfaction of their claims—and that the judgments should be satisfied in full.

That Ray died insolvent, and with full knowledge of this insolvency, said Green, Tracy & Co. or some of said firm, bought up a part of said *fi. fas.* and complainants ask a discovery of which, and that to some of said *fi. fas.* they may not have formal transfers.

That most of the *fi. fas.* so bought up, are against said Ray, jointly, with others; and that the fund in Court, was raised from the individual property of said Ray; and that it would be inequitable for them to receive any part of the fund, in Court, or more than they paid for said *fi. fas.*, for complainants believe that Green, Tracy & Co., bought the same, either for Ray or after his death, with full knowledge of the insolvency of Ray's estate, and the rights and liens of his other creditors.

Complainants say, that on some of the *fi. fas.* payments have been made, which are not credited on them; and that they may be required to discover the payments, and to whom, and amounts, and that they may be credited. Complainants believe that if the said *fi. fas.* had been pressed, heretofore, they could have been collected. But that the plaintiffs therein have laid by and neglected to do so, and have allowed large amounts of money, raised from said Ray's property, to be applied to junior liens and *fi. fas.*; and that so far as complainants are concerned, this amounts to a satisfaction of the *fi. fas.* of Green, Tracy & Co. or a satisfaction, *pro tanto.*

The bill prayed that defendants be enjoined from pursuing the fund, and that their *fi. fas.* be satisfied.

POE, MILLER & HALL, for plaintiff in error.

WHITTLE & RUTHERFORD, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] The structure of this bill is very objectionable. Most

of its allegations are inaccurate, loose and uncertain; and this is shown as follows:

1. It is alleged that "said firm of Green, Tracy & Co. *or some of the members composing said firm*", had obtained control of a number of the oldest *fi. fas.* and judgments against said Ray. This alternative statement must have reference, both to the firm and to individual members thereof; no other reasonable signification can be given to the words, *or some* of the members composing said firm; for if it had been intended to allege, that *some of the* members, in this behalf, acted for the firm and not for themselves, then there would have been no necessity to have made the statement in the alternative— as the acts of those members would have been the acts of the firm. The allegation is therefore defective. We learn from elementary works on this subject, that "if two plaintiffs sue, and the bill allege that the title was in one or other of them, in the alternative, it would be demurrable, not only for uncertainty, but, because it shows that there must, necessarily, be a misjoinder of the plaintiffs". So where two defendants are sued in the alternative, for a precisely similar reason, the pleading must be bad. (1 *Story Eq.* § 510.)

2. The bill goes on to allege that said firm of Green, Tracy & Co. or some of them, had obtained control of said *fi. fas.* "either by purchase, *or otherwise*". Insinuating, by another alternative statement that these *fi. fas. might* have been obtained by covinous arrangement. This loose and uncertain allegation, is also objectionable.

In the case of *Cresset vs. Milton* (1 *Ves. Jr.* 449. 3 *Bro. C. C.* 480) a bill had been filed to perpetuate testimony to a right of common, and of way; and it stated that "the tenants, owners, and occupiers of the lands, and in right thereof *or otherwise*, have, from time immemorial, had the right of way," &c. Upon demurrer, Lord *Thurlow* said, "you have not stated whether the right of way is appurtenant or appendant to the land, &c. that you hold; and you state it loosely, that you have such as belongs to your state *or otherwise;* so that your bill is to have a commission to try any right of common whatever". To like pur-

port, see judgment of *Lord Keeper North, in Gell vs. Hayward,* 1 *Ver.* 312.

3. For a similar reason is the statement objectionable, that complainants believe defendants "bought the same, *either for Ray,* or *after his death,* with a full knowledge of his insolvency," &c.

4. The bill also states, that "it *may* be that *to some of said fi. fas. and judgments,* they, the defendants, have not procured formal assignments and transfers," &c. And also, "*on some of the fi. fas.* and judgments, so bought and controlled by said Green, Tracy & Co. there have been payments made, which are not credited"; and they pray that the defendants may be compelled to disclose the payments, &c.

These, too, are inaccurate and uncertain averments, and objectionable on similar principles to those above stated.

*In Ryves vs. Ryves,* (3 *Ves.* 343,) where a bill was filed for a discovery of title deeds, and for the delivery of the possession of the lands to plaintiffs, &c. "upon a loose allegation, that under *some* deeds in the custody of the defendants, the plaintiff was entitled to *some* interest, in *some* estates in their possession, but without stating what the deeds were, or what the property was to which they applied, a demurrer was allowed".

5. Again—we find the allegation, "that *most of* the *fi. fas.* and judgments, so bought and controlled, are against said Ray, jointly, with others," &c. Touching a similar allegation in the bill, which was filed in the case of *McGehee et al. vs. Jones,* (10 *Ga.* 137,) this Court has said, that "no practical issue could be formed on it. He does not aver that the executor has no assets to pay the damages: he says, he has not in hand, sufficient for that purpose; and adds, that most of the assets have been paid out or distributed. There is no certainty in this averment".

[2.] But, if we take such statements as do appear in this bill, as the complainants' case, without objection for uncertainty, we strongly incline to think that the prayer cannot be granted.

According to such showing, what is their equity, as to the interest in the properties of the Telegraph Office (which was one half of said properties,) purchased by defendants?

The bill shows, that the purchase which they made of this property, was a *bona fide* purchase. It makes known the fact, that their *fi. fas.* were the oldest against this property, and that it was liable to these, and to the firm debts of Ray & Ross, which may have existed at the time of its purchase. It, perhaps, shows that they had used diligence and consulted thrift, getting control of the superior liens against the property; and then having control of these liens, purchased the property. If this were a *bona fide* purchase, however, and Green, Tracy & Co., have paid a consideration to Ray & Ross, or the estate of Ray, for the same, how can a Court of Equity compel the former, for the gratuitous benefit of others, now to lose a benefit, fairly gained by them in the due course of trade, by forcing them, as it were, *to satisfy their own executions out of their own property?*

It would seem that the very statement of the simple question, should be sufficient to constitute its own answer.

The maxim, *"Sic utere tuo ut alienum non laedas"* was invoked by the Counsel for the complainants, as opposed to the use which these defendants were making of their rights, as judgment creditors, here. We do not understand how this maxim can be made applicable to such a case, and we think it cannot be made applicable unless, possibly, where there was a distinct and accurate averment that these older *fi. fas.* had been purchased at a discount. In such case, perhaps, if the fact were distinctly set forth, a Court of Equity would not permit the legal title of the complainants, to the whole of the executions, to be used, as against the fund in Court, to the injury of the younger judgment creditors.

We may also add, here, that if there were a distinct allegation in the bill, to this effect, and the prayer was not that these older *fi. fas.* be enjoined, and be entered satisfied, but that in consideration of this fact, they be allowed to recover only *pro tanto*, this would present a different case—such a case as was

Green, Tracy & Co. vs. Ingram et al.

referred to in the books cited by the Counsel for the complainants.

As the case is presented, it is a simple question of right, between two sets of judgment creditors, to a given fund. One set, only, of them can have the right. If Green, Tracy & Co. have that right, the complainants cannot have it. If the former have the right, they are entitled to the fund. And to insist, that if they are thus allowed to get the fund, they will be doing wrong, and injuring others, is, as it impresses us, like insisting, *that by doing what is right, they will be doing what is wrong*.

[3.] What, in the next place, is the equity presented by the bill, as to the half interest in this printing office, retained by Ross? The bill alleges that this, his interest, is subject to these older *fi. fas.* owned by the defendants; and it has been insisted, that the defendants should be compelled to have the same subjected to the payment of their executions. Now, according to the bill, this interest is subject to these older *fi. fas.* —subject to the debts of the partnership of Ray & Ross, and is the private property of Ross. Thus, the latter is shown to be in the position of one with a fund in his hands, on which there are two liens or claims; and certainly, if the first of these, (as stated above) were being pressed against the property, he would have the right to insist, that in Equity, the plaintiffs in *fi. fa.* should be turned away, and compelled to go against a fund of Ray, which was his individual property—which is the character of the fund raised by the sale of these slaves.

If the reply be, that on this latter fund, too, there is another lien, viz: the lien of these complainants' judgments, the answer is, that this only shows, that these complainants, as well as Ross, as to this fund, are in the attitude of innocent claimants, with equal equities; and between such, a Court of Chancery will not interfere.

We may add, here, that if Ross' interest could be, by this bill, subjected to the payment of these *fi. fas.* he would be a necessary party to the bill.

[4.] As to the allegation, that the defendants, as plaintiffs

The Mayor, &c. vs. Shaw.

in these older *fi. fas.* "have not only laid by and neglected to enforce their rights, and the collection of their money, but have allowed money, to a large amount, raised from said Ray, by the Sheriff, either by sales or otherwise, to be applied to the payment of junior liens" &c.; it is the opinion of this Court, that the same presents no equity. There is no charge of fraud or collusion, or advantage gained by this conduct—nothing more than simple negligence; by which, so far as this statement shows, no one but the complainants, themselves, suffered. We know of no rule of Law or Equity, which will make this a satisfaction of the debt.

Judgment reversed.