## TILLMAN *v.* STEWART *et al.*

The equitable rule under which the holder of a junior mortgage is entitled
to tender to the holder of a senior mortgage the amount due thereon, and
demand an assignment of the same, is not applicable unless the former
shows that such an assignment is necessary to his protection; nor can
this rule be invoked by a mortgagee against a judgment creditor of his
mortgagor, having equities at least equal to those of the mortgagee, for the
purpose of compelling the judgment creditor to assign to the mortgagee
an older mortgage executed by their common debtor, and to which the
judgment creditor had acquired title for the express purpose of protecting
his junior judgment lien.

Argued April 29, — Decided June 8, 1898.

Injunction. Before Judge Littlejohn. Muscogee county.
February 25, 1898.

*Brannon, Hatcher & Martin,* for plaintiff in error.
*William A. Wimbish* and *McNeill & Levy,* contra.

LUMPKIN, P. J.    At a time when the title to a tract of land
known as "Fontaine's upper place" was unquestionably in
George H. Fontaine, he mortgaged the same to one Sheppard.
Afterwards Fontaine mortgaged the same land to Caroline Stew-
art and Edna Williams, and, still later, conveyed it to Mrs.

Fontaine.   Tillman obtained against Fontaine a common-law judgment of younger date than any of these mortgages, and caused it to be levied upon the premises above mentioned.   Mrs. Fontaine interposed a claim.   While the claim case was pending, Tillman and others filed an equitable petition against Fontaine, Mrs. Fontaine, Sheppard, the holders of the junior mortgages, and a number of other persons.   This petition attacked as fraudulent these two mortgages, prayed that the court take equitable jurisdiction of specified matters of dispute among the parties relating to a considerable amount of property, including the tract of land above referred to, that the rights and equities of all persons interested be adjudicated, and that to this end a receiver be appointed and an appropriate writ of injunction issue.   Upon this petition an order was granted restraining the junior mortgagees from levying upon and bringing to sale the land described in their respective mortgages, until the further order of the court.   Subsequently Tillman purchased from Sheppard an execution issued upon the mortgage held by him, and caused the same to be levied upon the mortgaged property.   The holders of the other mortgages then filed their petition to enjoin Tillman from having the land sold under this levy until after the disposition of the pending litigation over the same.   They made no attack upon the validity of the Sheppard mortgage, and admitted that it constituted the oldest and best lien on the premises therein described.   In support of their alleged right to the injunction for which they prayed, they averred, among other things, that they had tendered to Tillman the full amount due upon the Sheppard mortgage held by him, upon condition that he would assign the same and the execution issued thereon to them.   The foregoing statement, in connection with what is hereinafter said concerning the nature of their petition, will suffice to an understanding of so much of its contents as is now material to be considered.   Tillman, in his answer, alleged that he had purchased the Sheppard mortgage and execution in order to protect his common-law judgment against Fontaine, and set forth divers facts and reasons for pursuing this course.   The judge passed an order enjoining the further progress of the Sheppard execution, unless Tillman,

the assignee thereof, would within ten days accept the tender made to him by the plaintiffs, and on the conditions by them proposed. To this order Tillman excepted.

It seems no longer open to question that the holder of a junior mortgage is equitably entitled, when necessary to his protection, to make a tender to a prior mortgagee, who is proceeding to enforce his mortgage, of the principal, interest, and all costs due thereon, and demand a transfer thereof. In other words the junior mortgagee has a right to redeem in order to protect his interests. See Sheldon on Subrogation (2d ed.), § 17 et seq. A full and intelligent discussion of the subject is to be found in Jenkins v. Continental Insurance Co., 12 How. Pr. 66, where, in a very clear opinion, Woodruff, J., explains the reasons upon which this rule rests. But giving the doctrine above announced its fullest scope, it by no means follows that the plaintiffs in the present case are entitled to invoke it in their behalf. In the first place, they do not satisfactorily make it appear that it is necessary to their protection that they should control the senior mortgage. According to their own allegations, "the mortgaged property is approximately worth the amount of" this senior mortgage and the junior mortgages held by them. While they do allege that they have been enjoined from either bidding on the property if brought to sale under this senior mortgage, or from claiming the surplus which would be in the sheriff's hands after paying off this lien, and that accordingly a sale under it would defeat their lien and give the defendant an unconscionable advantage over them, these particular averments are not borne out by the very exhibit attached to their petition and on which they rely. On the contrary, this exhibit is a copy of the restraining order already mentioned; and it simply enjoined these plaintiffs "from levying upon or selling the land . . described in their respective mortgages, until the further order of the court." They would therefore be entirely free to bid as purchasers, if the land should be brought to sale under the senior mortgage and was about to be sacrificed; or, in case it brought its value, they could notify the sheriff that their lien upon the property had been transferred by the sale to the proceeds arising therefrom, place

their executions in his hands, and instruct him not to pay out any part of the surplus, after satisfying the prior mortgage debt, to holders of inferior liens. So it will be seen that for neither of the reasons set forth by them would they be prejudiced by such a sale; and they do not even suggest how, in any other way, they would be hurt if unable to get a transfer of the senior mortgage. Besides, they appear in court confessedly as holders of second mortgages which have been attacked as fraudulent, and themselves show that so much reason for the attack existed as to justify a court of competent jurisdiction in restraining them from seeking to enforce their claims until the bona fides thereof could be more closely scrutinized. Certainly, a court of equity should hesitate to put in operation its extraordinary power to compel a prior mortgagee to transfer his lawful and undisputed mortgage to a second mortgagee, when it is at least a matter of doubt whether the latter has any rights whatever in the premises. Therefore, we are far from being prepared to say, even if the present action had been instituted against the original holder of the senior mortgage, the plaintiffs would have been entitled to compel a transfer thereof to themselves.

But the present holder of this senior mortgage is not the original mortgagee, whose only right was to enforce the collection of his debt. On the contrary, the defendant is, like the plaintiffs, a junior encumbrancer. He purchased the senior mortgage execution with a view to controlling the same in order that he might thus be able possibly to protect a lien held by him which is even inferior to those held by the plaintiffs, if the latter are good. As between him and them, he certainly appears to have the more need of controlling the mortgage in controversy,—if, indeed, any necessity exists that either should do so in order to secure protection. The plaintiffs have no concern in the property's selling for more than the amount called for by the senior mortgage and those held by themselves; whereas the defendant will, if the junior mortgages are valid, lose all participation in the fund, so far as his judgment is concerned, unless the property brings enough to more than satisfy all the mortgage liens. Moreover, it is to his interest that the sale under the senior mortgage should take place at once; for,

so far as appears, the property will bring as much now as it might probably sell for in the near future, and the senior mortgage, because of accruing· interest (which the record shows is not being paid as it falls due), is constantly growing larger in amount, and therefore the longer its collection is postponed the greater will be the proportion of the proceeds of the land which it will absorb.

Suppose, however, the equities, as between the plaintiffs and Tillman, were equal; that is to say, that the former in the first instance had as much right as did the latter to demand an assignment of the mortgage, and had in fact procured such an assignment, could he (a junior encumbrancer) bring a similar action to compel them (also junior encumbrancers) to give up the protection the mortgage afforded, after they had in good faith acquired the transfer? We apprehend not; and yet it would seem that he could present a much stronger case, in so far as showing a necessity for the court to intervene for his protection is concerned, than they have done in their behalf. The conclusion is irresistible, that where one of two junior encumbrancers, with equities evenly balanced, actually secures a transfer of a prior mortgage in the way of both, a court of equity would not be justified in depriving him of the advantage thus honestly gained in order that this very advantage might be conferred upon the other junior mortgagee. Such a thing would not be in harmony with the recognized principles of equity jurisprudence, which are daily applied in enforcing the doctrine that where equities are otherwise equal, diligence on the part of one whereby he secures a fair advantage is not only permissible, but to be encouraged.

A logical result growing out of the plaintiffs' supposed right to compel Tillman to assign to them his superior lien would be to compel them, on his petition, to assign it back to him after they obtained it, thus presenting a sort of equitable game of battledore and shuttlecock. Our attention has not been called to any case where any court has advanced or applied the rule that one junior encumbrancer can compel another, under any circumstances, to forfeit an advantage gained by procuring a transfer of a senior mortgage. ·Obviously, such a rule would

be difficult of intelligent application and enforcement; for it must often happen that it is a question of grave uncertainty which of two or more persons holding junior liens is best entitled to the protection afforded by controlling a senior lien, if, perchance, any satisfactory solution whatever of the question can be arrived at. The following are a few of the numerous Georgia cases which show that this court has hesitated to interfere with vested legal rights, fairly acquired, upon the idea that equity required so doing: *Green, Tracy & Co.* v. *Ingram,* 16 *Ga.* 164; *Robinson* v. *Thompson & Co.,* 30 *Ga.* 933; *Winn* v. *Henderson,* 63 *Ga.* 365; *Thomas* v. *Wilkinson,* 65 *Ga.* 405; *Sanders* v. *Foster,* 66 *Ga.* 292; *Georgia Chemical Works* v. *Cartledge,* 77 *Ga.* 547. We are satisfied that the injunction now under review ought not to have been granted.

*Judgment reversed. All the Justices concurring, except Little, J., disqualified.*